IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

DAVID MICHON,

                    Plaintiff,

         v.                                Case No. 16 C 6104

MARTIN UGARTE, OFFICER EMILY
CAMPBELL, OFFICER KEITH             Judge Harry D. Leinenweber
FUELLING, OFFICER OLIVER
#8377, OFFICER SCOTT #308,
OFFICER CLARK, #1091, CITY
OF CHICAGO, and UNKNOWN
OFFICERS,

                    Defendants.

                  **MEMORANDUM OPINION AND ORDER**

    Before the Court is Defendant Martin Ugarte's Motion to Dismiss [ECF No. 26]. For the reasons stated herein, the Motion is denied except with respect to the negligence cause of action (Count IV). Count IV is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1).

                          **I. BACKGROUND**

    Plaintiff David Michon (hereinafter, "Plaintiff" or "Michon") brings a six-count Complaint, five of which are state-law claims, against the City of Chicago, its officers, and Defendant Martin Ugarte ("Ugarte"), a private citizen. For the purposes of deciding Ugarte's Motion to Dismiss, the Court

accepts as true the following facts provided by Plaintiff. *Katz-Crank v. Haskett,* 843 F.3d 641, 646 (7th Cir. 2016).

On December 27, 2014, Ugarte was driving behind Plaintiff when he "caused a bottle of water to strike" Plaintiff's car. The two parties then exited their vehicles, at which time Ugarte "falsely announced that he was a police officer." Ugarte proceeded to hit Plaintiff. Plaintiff "stagger[ed]" and while "bracing his knee for support, Plaintiff tore his ACL and meniscus."

The Defendant Officers – Chicago Police Officers Campbell, Fueling, Oliver, Scott, and Clark – then arrived on the scene. The Officers intervened and stopped Ugarte. They then handcuffed and arrested him. Plaintiff alleges "upon information and belief" that while under arrest, Ugarte "spoke with the Defendant Officers and advised the officers that Ugarte was a police officer." Shortly thereafter, the Defendant Officers released Ugarte and arrested Plaintiff.

Plaintiff alleges that he repeatedly asked the Defendant Officers for medical care while he was handcuffed and transported to the police station. The Defendant Officers denied his requests. After Plaintiff arrived at the police station, he again asked to see a doctor. An unknown Defendant Officer threatened that he would be "lost in the system and not

released until after the New Year" if he continued to request medical care. Plaintiff was charged with battery and criminal damage to property and then released. Plaintiff then asked for a ride to the hospital but was told by an unknown Defendant Officer to leave the station "or we'll throw you back in." The charges against Plaintiff were dismissed on July 23, 2015.

In this lawsuit brought a year and a half after the alleged incidents took place, Plaintiff sues the City of Chicago, its various officers, and Ugarte. The single federal-law claim in the suit is a § 1983 claim made against the Defendant Officers for denial of medical care (Count V). Against Ugarte, Plaintiff brings four state-law claims: false arrest (Count I), battery (Count III), malicious prosecution (Count IV), and negligence (Count IV). (Plaintiff mislabels both the malicious prosecution claim and the negligence claim as Count IV.) Against the City, Plaintiff asserts a *respondeat superior* claim (Count III), attempting to hold it liable for the acts of the Defendant Officers, its employees. The only claim against Ugarte that overlaps with a claim against any other Defendants is Count I in which Plaintiff accuses both the Defendant Officers and Ugarte of violating Illinois law by falsely arresting him.

**III. ANALYSIS**

Ugarte's Motion to Dismiss is a three-page document that simulatenously seeks to dismiss claims that do not exist (*e.g.,* a Count VII, VIII, and IX in a six-count Complaint) and ignores those that do (*e.g.,* the negligence claims). Despite the obvious deficiencies, the Court treats the Motion as a prayer to dismiss all counts of the Complaint against Ugarte.

**A. Waiver**

If brevity is the soul of wit, then the Court could have done with a bit more tediousness. Of three pages Ugarte devoted to his Motion, all but five paragraphs are spent regurgitating Plaintiff's Complaint. These five paragraphs constitute all of Ugarte's arguments as to why the Court should grant him relief, and yet, as Plaintiff points out, they cite precisely "nothing." Ugarte's Motion contains not a single case or any other authority in support of his prayers for dismissal.

As the Seventh Circuit "repeatedly ha[s] made clear," "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991). This waiver principle is as true in a motion to dismiss as it is on appeal. For example, in *Cannon v. Burge,* No. 05 C 2192, 2006 U.S. Dist. LEXIS 4040, at *28 n.8, *33, *36, *66, *76-77 (N.D. Ill. Feb. 2,

2006), Judge Amy St. Eve dismissed several defenses that the defendants raised when they did not "support th[eir] argument with citations to any case law," "provide the Court with any pertinent case law," or furnish "any developed legal argument in support of their . . . conclusion."

While it is true that Ugarte's Reply Brief was more substantial than his initial Motion (a low bar to clear), the brief does not salvage his case. Arguments raised for the first time on reply are waived. *See, e.g., Dye v. United States Farm Servs. Agency (In re Dye),* 360 F.3d 744, 751 n.7 (7th Cir. 2004); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 (7th Cir. 1994). Moreover, Ugarte's Reply Brief does not at all address the waiver question, despite that being the only issue that Plaintiff raised in opposition to the Motion to Dismiss. The Court thus has no basis to attempt to rescue the Motion.

In sum, Ugarte's Motion to Dismiss is spent reciting Plaintiff's allegations, denying them, and then asserting that "there is not a plausible basis to plead that the Defendant Ugarte was responsible." Insofar as Ugarte raises any cognizable arguments, the arguments are forfeited by virtue of their utter lack of legal support or untimely appearance.

### B. Merits of Claims

Even if the Court were to stretch and reach the merits of Ugarte's arguments, this would make no difference to the ruling. Ugarte's arguments rest on a police report that he attached to his Reply Brief. According to the report, the Defendant Officers spoke to an independent witness before deciding to arrest Plaintiff. Relying on the report, Ugarte argues that the witness's statement to the police means that whatever Ugarte told the police was not "the sole basis for the arrest," and therefore Ugarte cannot be liable for falsely arresting Plaintiff or maliciously prosecuting him. *See, Brabec v. Green,* No. 05 C 6646, 2006 U.S. Dist. LEXIS 47773, at *5 (N.D. Ill. July 13, 2006) ("Illinois law requires that in [false arrest] claims against a private individual, the plaintiff allege that the arresting officer relied solely on the information provided by the private individual when making the arrest.") (citing to *Dutton v. Roo-Mac, Inc.,* 100 Ill. App. 3d 116, 119-120 (2d Dist. 1981)).

However, in ruling on a motion to dismiss, the Court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. *See,* FED. R. CIV. P. 12(d); *see also, e.g., Deckard v. GMC,* 307 F.3d 556, 560 (7th Cir. 2002). While a court may "take judicial notice of matters of

public record without converting a motion for failure to state a claim into a motion for summary judgment," a police report is not a proper subject for judicial notice. *GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080-81 (7th Cir. 1997).

This is because "[a] police report is not a source of indisputable accuracy." *Vincent v. Williams,* 279 Ill. App. 3d 1, 6 (1996) (internal quotation marks omitted). Yet under Rule 201 of the Federal Rules of Evidence, a court may judicially notice a fact only where that fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court thus follows "the vast majority of courts" in disregarding the factual allegations from the police report. *See, Eubank v. Wesseler,* No. 10-210-DLB-JGW, 2011 U.S. Dist. LEXIS 93135, at *10 n.2 (E.D. Ky. Aug. 19, 2011) ("The vast majority of cases hold that police reports do not constitute matters of public record appropriate for judicial notice."); *Blackwell v. Kalinowski,* No. 08 C 7257, 2009 U.S. Dist. LEXIS 51590, at *5 (N.D. Ill. June 18, 2009) ("[T]he factual allegations contained in the police reports do not become matters of public record suitable for consideration on a motion to dismiss.").

Likewise, the principle that "in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to

dismiss if they are referred to in the plaintiff's complaint and are central to his claim," does not allow for consideration of the police report in this case. *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) (internal quotation marks and ellipses omitted). Plaintiff did not in his Complaint refer to the police report. He did not attach the report, quote from it, or mention it in any direct manner. *Cf. Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (finding an agreement to be part of the pleadings where the plaintiff "repeatedly quotes from and refers to the Agreement in his complaint"). While Plaintiff relies on his arrest to make out a false arrest claim, the arrest report itself is not central to his claim. Plaintiff may cry false arrest even if the arrest report does not exist. *Cf. id.* (finding an employment agreement to be central to the plaintiff's claims because the agreement "grants him a property interest in his employment," without which he cannot sue).

Without the police report, Ugarte's arguments (raised for the first time in a reply brief) fall apart. Moreover, even with the arrest report considered, Ugarte cannot prevail. The arrest report makes a single mention of the witness, stating "Martin Ugarte (victim and complainant) and Samantha Alverez (witness) related to A/OS that listed offender was upset that

the victim had cut him off in traffic." The rest of the report either did not indicate who provided the information or made clear that it was Ugarte who supplied the information found in the report. When construed in the light most favorable to Plaintiff, it is possible that the independent witness only related to the Officers what happened on the road, before the men stopped driving and exited their vehicles, while Ugarte supplied the information that led to Plaintiff's arrest for battery and property damage. Because the Court must draw all reasonable inferences in Plaintiff's favor, it cannot accept Ugarte's argument that Plaintiff fails to state a claim against him given the report. *See, e.g., Berger v. NCAA,* 843 F.3d 285, 289-90 (7th Cir. 2016) ("In evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor.") (internal quotation and alteration marks omitted).

### C. Subject Matter Jurisdiction

Nonetheless, the Court cannot allow this case to proceed without an inquiry into its power to hear the case. As a federal district court, the Court has an obligation to review its own subject matter jurisdiction *sua sponte* and must dismiss the case if it finds that it lacks jurisdiction. *See,* FED. R.

Civ. P. 12(h)(3); *Hammes v. AAMCO Transmissions,* 33 F.3d 774, 778 (7th Cir. 1994); *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1181 (7th Cir. 1989); *see also, Llano Fin. Grp., LLC v. Prince,* No. 2:15-CV-297, 2016 U.S. Dist. LEXIS 22965, at *4-5 (N.D. Ind. Feb. 25, 2016); *FDIC v. Hoffman,* No. 4:13-cv-04075-SLD-JAG, 2013 U.S. Dist. LEXIS 145199, at *2 (C.D. Ill. Oct. 8, 2013); *Univ. of Chi. Hosps. & Clinics v. Olson,* No. 87 C 10023, 1988 U.S. Dist. LEXIS 892, at *1 (N.D. Ill. Jan. 28, 1988). This obligation is particularly pressing here, as all of the claims that Plaintiff asserts against Ugarte are based on state law.

The only basis for the Court to exert jurisdiction over Plaintiff's state-law claims is 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(a) allows the Court to hear Plaintiff's state-law claims if these claims are "so closely related" to the federal-law claim against the Defendant Officers "as to be in effect part of the same case." 28 U.S.C. § 1367(a); *Williams Elecs. Games, Inc. v. Garrity,* 479 F.3d 904, 906 (7th Cir. 2007).

Under this analysis, Plaintiff's negligence claim must be dismissed because the Court does not have subject matter jurisdiction over it. Plaintiff complains that Ugarte was negligent when he "failed to exercise due care in the operation of his motor vehicle." In particular, Plaintiff alleges that Ugarte "failed to maintain a proper lookout for traffic,"

"swerved into Plaintiff's lane," and "struck Plaintiff's motor vehicle with a water bottle." But all this conduct took place before the Defendant Officers even arrived on the scene. By the time the Officers arrived, Plaintiff and Ugarte had stopped their vehicles, exited them, and were engaged in fisticuffs. The Defendant Officers thus were not present when Ugarte drove negligently. They did not observe the alleged poor driving, contribute to it, or somehow bear responsibility for it.

The federal claim against the Defendant Officers (as opposed to the Defendant Officers themselves) is even further removed from the negligent driving. Recall that the federal claim is premised on the allegation that the Officers failed to provide medical care. This alleged failure occurred after the men stopped driving and the Officers arrived on the scene. Upon arrival, the Officers separated the men, arrested Ugarte, talked to him, let him go, and then arrested Plaintiff. Only at this point, when Plaintiff was under arrest and the Officers ignored his requests for medical care, does his federal cause of action against them arise. The federal-law claim thus is separated in time, space, actors, and motivation from the state-law negligence claim. Far from being "in effect part of the same case," the claims bear little relation to each other.

Luckily for Plaintiff, his other claims look better, at least from a jurisdictional point of view. In all of the other claims, the Defendant Officers were present and observed the offending conduct. Plaintiff alleged that upon their arrival, the Defendant Officers "proceeded to intervene and stop Defendant Ugarte's assault upon Plaintiff." The Officers therefore saw at least some of the battery that Ugarte committed against Plaintiff. Since the Defendant Officers allegedly saw Ugarte batter Plaintiff (Count III), they had less reason to arrest Plaintiff or allow Ugarte to swear out a complaint against him – thus strengthening Plaintiff's claim for false arrest (Count I), *respondeat superior* (Count II), and malicious prosecution (Count IV) – and more reason to be aware of Plaintiff's physical injuries and the need to provide medical attention, thus strengthening Plaintiff's claim for unconstitutional deprivation of medical care (Count V).

Based these facts, the Court finds that it has supplemental jurisdiction over the remaining claims. The claims are tied together by a "loose factual connection" and thus are part of the same case. *See, McCoy v. Iberdrola Renewables, Inc.,* 760 F.3d 674, 682-83 (7th Cir. 2014) (explaining that "[c]laims form part of the same case or controversy when they 'derive from a common nucleus of operative fact'" and that "[a] loose factual

connection between the claims is generally sufficient") (internal quotation marks omitted). However, if warranted by developments in the case or future briefing by the parties, the Court may revisit the issue. *See,* FED. R. CIV. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action.") (emphasis added); 28 U.S.C.S. § 1367(c) (listing the circumstances under which a district court may decline to exercise its supplemental jurisdiction); *Wright,* 29 F.3d at 1251 ("[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. . . . [T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

One more issue must be addressed. So far, the Court has treated Plaintiff's malicious prosecution claim against Ugarte as a state-law claim. However, unlike with his false arrest and battery claim, Plaintiff does not label the malicious prosecution claim as a state-law claim. As such, it is possible that Plaintiff means to assert a federal malicious prosecution claim, permissible under 42 U.S.C. § 1983. *See, e.g.,*

*Washington v. Summerville,* 127 F.3d 552, 558-59 (7th Cir. 1997) (listing the elements of a malicious prosecution claim under § 1983 and explaining that "[a] state law cause of action for malicious prosecution is not interchangeable with a federal action"). If this is so, then the claim must fail because Ugarte is a private citizen.

A private citizen "can be brought within the grasp of section 1983" if he "conspired with a public employee to deprive the plaintiff of his constitutional rights." *Proffitt v. Ridgway,* 279 F.3d 503, 507 (7th Cir. 2002). Here, Plaintiff has not brought the malicious prosecution claim against anybody but Ugarte. It is difficult to see how Ugarte conspired with the Defendant Officers (or some other public employee) to maliciously prosecute Plaintiff when no actual public employee is alleged to have maliciously prosecuted Plaintiff.

The fact that Ugarte allegedly but falsely represented himself as a police officer does not change the analysis. As a court (somewhat colorfully) has stated the matter, "[j]ust because [the defendants] may have proclaimed themselves as 'the law in Oak Lawn' does not of course make it so, any more than similar statements by self-proclaimed vigilantes or those intent on terrorizing towns in the standard Western movie plot had no legal effect." *Vanderlinde v. Brochman,* 792 F.Supp. 52, 53

(N.D. Ill. 1992). *See also, Wilson v. Price,* 624 F.3d 389, 392 (7th Cir. 2010) ("The mere assertion that one is a state officer does not necessarily mean that one acts under color of state law."); *Gibson v. Chicago,* 910 F.2d 1510, 1518-19 (7th Cir. 1990) (holding that "the actions of an officer who has no authority whatsoever to act" are outside the ambit of § 1983). At bottom, Ugarte was a private citizen acting without any state authorization and so cannot be sued under § 1983.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Ugarte's Motion to Dismiss [ECF No. 26] is granted in part and denied in part. While the negligence claim is dismissed with prejudice pursuant to Rule 12(b)(1), the other causes of action survive the Motion.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: February 15, 2017