vcIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DAVID MICHON,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**OFFICER EMILY CAMPBELL #15492; OFFICER KEITH FUELLING #13618; OFFICER ERIC OLIVER #8377; OFFICER RICHARD SCOTT #308; and THE CITY OF CHICAGO,**<br><br>        **Defendants.** | **Case No. 16 C 6104**<br><br>**Judge Harry D. Leinenweber** |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I. <u>BACKGROUND</u>

This case results from an incident of road rage involving the Plaintiff, David Michon ("Michon"), and a settling Defendant, Martin Ugarte. The police were summoned to break up the fight and the incident resulted in the Plaintiff's arrest for battery and criminal damage to property. The Plaintiff also sustained a significant twisting injury to his right knee and lacerations to his head and face. Plaintiff was transported several miles to the 8th District Police Station on 63rd Street and St. Louis Avenue. Approximately, four (4) hours elapsed between Plaintiff's arrest and his release from custody.

When the police approached him at the scene, blood was dripping into his eyes from his head laceration. Although he asked for medical treatment at the scene, he was rebuffed by Defendant Campbell who told him basically to shut up. While being transported to the station Plaintiff twice asked Defendant Fuelling to take him to a hospital. He responded, "leave me out of it." At the station Plaintiff had a pronounced limp and was bleeding from his head. Fuelling, instead of providing medical attention, told Plaintiff to clean the blood off his face. As he was doing so he again asked Officers Fuelling, Campbell and an Officer Oliver to provide him with medical attention. All three laughed at him and Campbell told him that he would be "lost in the system," and remain in custody until after New Year's Day if he continued to request medical treatment. He remained in the station for four to five hours while being processed. As he was being released from custody he asked for transport to a doctor one last time. He was told to "get the fuck out." He left with his personal belongings, which included his wallet that contained some "twenties." He did not have his cell phone because he had left it in his car which was parked at the scene of the arrest.

He then walked the 2.2 miles to his car, limping badly. He attempted to board a bus but the driver, seeing him bloody, dizzy, and limping, drove off. He looked for a cab but did not see one.

He had blood on his clothes and was still bleeding from his head and was in extreme pain. Ultimately, he reached his vehicle and drove himself to the hospital.

At the emergency room, x-rays were taken of his knee and his head was stitched up. He was given medication for pain, given a knee wrap, and recommendation at discharge that he use crutches and be followed up by an orthopedic physician. Six days later he was seen by an orthopedic surgeon, Dr. Thangamani who ordered an MRI of his right knee. The MRI disclosed a full thickness anterior cruciate ligament ("ACL") tear on his right knee along with tears in his medial and lateral aspects of his right meniscus. He also sustained a lesion to his medial femoral condyle. One month later Plaintiff had knee surgery. Even after surgery he is unable to resume his preinjury work as a union floor layer. According to Dr. Thangamani he is a candidate for total knee replacement.

## II. **DISCUSSION**

This case is before the Court on Plaintiff's Second Amended Complaint which is now only against the City of Chicago and four police officers. The case has three counts, two against the officers, including a new one for deprivation of due process, one for denial of medical care, and a state law count against the City under the theory of *respondeat superior.* Defendants have moved for summary judgment on all counts. The deprivation of due process

count is based on a state created danger theory and the denial of medical care is based on the Fourth Amendment's objectively reasonable standard governing pre-trial detainees.

### A. Denial of Medical Care

The Seventh Circuit has identified four factors in determining whether the officers conduct was objectively unreasonable. The first is whether the officers had notice of the arrestee's medical needs, whether by word or observation. Second, the seriousness of the medical need, which alone need not be objectively serious, but is to be balanced on a sliding scale with the third factor, the scope of the requested treatment. Finally, the forth factor is the police interests, *i.e.*, administrative, penological, or investigatory concerns. *Williams v. Rodriquez*, 509 F.3d 392, 403 (7th Cir. 2007). In addition, the plaintiff must show that the defendant's conduct caused the harm complained of. *Ortez v. Chicago*, 656 F.3d 523, 530 (7th Cir.2011).

In analyzing the facts of this case, it appears to the Court that Plaintiff has produced sufficient evidence that the denial of medical care was objectively unreasonable. First, the officers had notice of his claimed injuries: He told them over and over again that he needed medical care, he was bleeding from the head, and had a noticeable limp. Think back when watching a football game, and the star running back limps off the field. The first

concern is that he may have suffered a serious knee injury. The second factor, the seriousness of the need, was also there. While the officers could not reasonably be said to be on notice that he had suffered a torn ACL, nevertheless the Plaintiff was painfully limping and was only asking to be taken to a hospital. He was not requesting that the police provide him with surgery or a knee replacement. Finally, there does not appear to have been a police interest that would have prevented the transportation to a medical facility. The City's 30(b)(6) witness testified that under the Department General Orders, an arrestee who requests medical care is to receive it if not unreasonable. In addition, the Plaintiff was being released from custody so there were no safety concerns to the public. Finally, there are no claimed administrative concerns, such as lack of manpower. So, a trip to the hospital would not have caused the department undue hardship.

The final issue is whether the Defendants' denial of medical care caused injury to the Plaintiff. The Defendants make much of the point that Plaintiff suffered the ACL tear during his scuffle with Ugarte and that the police did not injure him. However, as Plaintiff points out, having to walk 2.2 miles on an injured leg cannot be said as a matter of law that he suffered no injury traceable to that walk. In addition, Plaintiff's expert witness, Dr. Chudik, an orthopedic surgeon, testified that walking

activities accompanied by an ACL tear can lead to meniscus tears, which the plaintiff did suffer. Dr. Thangamani, the orthopedist who performed the knee surgery, testified that while walking 2.2 miles with a torn ACL would not cause the tear but such a walk "after a significant injury would temporarily exacerbate the swelling and pain that he would experience after the injury." It will be up to the jury to determine from the evidence, whether or to what extent any injury the Plaintiff may have sustained as a result of the failure to provide the requested medical treatment. The Motion for Summary Judgment as to the denial of medical care count with respect to Defendants Campbell, Fuelling, and Oliver is denied. However, Defendant Scott is dismissed. He supplemented the Motion with his affidavit of non-involvement and the Plaintiff does not appear to challenge this.

### B. The State Created Danger Count

This is a new count added after the Court ruled on the Motion to Dismiss. The state created danger theory is an exception to the *DeShaney v. Winnebago County*, 489 U.S. 189, 197 (1989), rule that there is no affirmative right to governmental protection, and it is a narrow one. *Doe v. Village of Arlington Heights*, 782 F.3d 535, 538 (7th Cir. 2015). The claim depends on an actual danger created by the state rather than a potential one and is based on the due process clause. Such claims are rare and normally require

that the state actor turn a potential dangerous situation into an actual dangerous one. It appears that the paradigm of a state created danger is the case where the police pick up an obviously drunk individual who is in a relatively safe area, and then release him into a known hazardous area. *Paine v. Cason*, 578 F.3d 500, 511 (7th Cir. 2012).

In this case the charge is that the police did not provide medical care and released him 2.2 miles from his car without providing transportation, knowing that he needed to recover it. Plaintiff had the wherewithal to get to his car without having to walk. He had money in his pocket. There were many establishments along the route where he would have access to a telephone to call a cab or a friend for a ride. While the police officers' actions appear (at least in Plaintiff's version which we rely upon in a summary judgment proceeding) to have been impolite bordering on boorish, they nevertheless do not rise to the level of a due process violation. It should also be recalled that this case involves the denial of medical care giving rise to a claim under the Fourth Amendment rather than due process, so that there is some conflict in providing constitutional protection for the same conduct under separate constitutional provisions. The court grants the Motion for Summary Judgment as to the state created danger claim.

### C. Qualified Immunity Claim

With regard to the qualified immunity claim, the right to medical care is clearly established. *Paine* at 506. The Court need not determine whether the state created danger rule was clearly established under the facts of this case because the court found that there was no state created danger.

### III. **CONCLUSION**

The Motion for Summary Judgment on behalf of Defendants Campbell, Fuelling, and Oliver is denied as to the Denial of Medical Care Count but is granted on the State Created Danger Claim. Summary Judgment is granted in favor of Defendant Richard Scott on all counts.

The Plaintiff has lately filed a Motion to Strike some of Defendants' Statements of Material Fact. The Court has read the Motion and finds that it is moot as to the current summary judgment motion. Accordingly, the Motion to Strike is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　 Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　 United States District Court

Dated: 1/10/2019